JOURNAL ENTRY AND OPINION
Defendant-appellant, Tracie Harden, appeals the judgment of the Cuyahoga Court of Common Pleas sentencing her to five years incarceration upon her plea of guilty to child endangerment, in violation of R.C.2919.22. Appellant contends that 1) she was denied her right to effective assistance of counsel because her counsel did not object to testimony at the sentencing hearing regarding the cause of the victim's injuries; 2) the trial court abused its discretion by allowing testimony regarding the cause of the victim's injuries; and 3) the trial court erred in imposing the maximum sentence for the offense. For the reasons set forth below, we affirm.
On August 1, 2000, the Cuyahoga County Grand Jury indicted appellant on one count of child endangerment, in violation of R.C. 2919.22(B), and one count of felonious assault, in violation of R.C. 2903.11. The charges arose out of an incident that occurred in appellant's in-home daycare center on May 11, 2000. The victim was a three-month-old baby.
On March 20, 2001, as part of a plea agreement, appellant pled guilty to an amended charge of child endangerment; specifically, reckless child endangerment due to a violation of a duty of care resulting in serious physical harm to the victim, in violation of R.C. 2919.22(A). As amended, the charge was a felony of the third degree, with a possible term of incarceration of one to five years, in one-year increments, and up to a $10,000 fine.
The presentence investigation report ordered by the trial court indicated that on May 11, 2000, appellant told the detective investigating the incident that she had placed the victim, Charis Coates, in her car seat on the basement floor while she went into another room to get a clean diaper for her. Appellant reported that she heard a thud, ran back into the room, and discovered that Charis had fallen out of her car seat.
The next day, however, appellant and her lawyer appeared at the Euclid Police Department. According to appellant, she wanted to change her statement in order to be honest with [the] police. Appellant then related that Charis was not on the floor when she fell, as appellant had previously stated. Rather, appellant stated that she placed Charis in her car seat, which was located on top of an approximately four-foot high wet bar in the basement, and then went into the next room to get a clean diaper. She then heard a loud thud and ran back into the room. The car seat was on the floor and Charis was next to it. According to appellant, her three-year-old son was standing next to the baby and told her that the baby had fallen asleep.
The trial court held a sentencing hearing on April 25, 2001. In addition to her own testimony, appellant presented three witnesses at the hearing. Claudine McCoy testified that her daughter had been in appellant's care for approximately ten months prior to the tragic incident on May 11, 2000. McCoy testified that appellant was a wonderful provider, a wonderful person and that if appellant ever provided daycare for children again, she would entrust her daughter to appellant's care.
Kitt Davis testified that appellant had cared for her young daughter for approximately fifteen months. According to Davis, she never had a problem with appellant and she still trusted appellant to watch her daughter.
James Draper testified that he was acquainted with the defendant and her family and with the family of the victim. He encouraged the trial court to consider community control sanctions and counseling for appellant.
Appellant testified that she had taken care of children in her home since her three-year-old son was a baby and had never had any problems. She testified further that after the incident, the parents of several of the children that she had watched had allowed their children to stay overnight at her house and asked her if she would ever consider daycare again because they wanted to bring their children back to her.
At the hearing, appellant offered another version of what had happened on May 11, 2000. Appellant testified that Charis had been sick for most of the week prior to the incident and slept most of the day on Wednesday, May 11, 2000. At approximately 1:00 p.m., appellant began feeding her. According to appellant, she noticed that Charis needed a diaper change, so she placed her in her car seat on the wet bar in the basement and went into the laundry room to find a diaper. Appellant testified that when she returned, she saw her three-year-old son on a bar stool, holding onto Charis. She then saw him drop her.
Appellant testified that she immediately knew something was wrong with Charis because she was limp and appellant had to hold her head up. She called Charis' mother and told her to come get her daughter. Appellant testified that blood and mucus then started coming out of Charis' nose so appellant's husband called 911.
Dr. Barbara Evans, a pediatrician, testified that Charis had been her patient since birth. According to Dr. Evans, Charis was a healthy newborn and was meeting every developmental milestone at her two-month checkup. Dr. Evans testified that since the incident on May 11, 2000, however, this child is neurologically devastated. Dr. Evans testified that Charis can only swallow liquids and will never be able to chew and swallow solid foods. Dr. Evans testified further that Charis is a quadriplegic who most likely will never be able to walk, feed herself or perform any of the activities of daily living that a normal person is able to do and that she has a visual impairment that in effect makes her blind. Dr. Evans also testified that Charis has seizures and her cognitive development will most likely always be limited to that of an approximately four-month-old baby. Finally, Dr. Evans testified that Charis' injuries could not have been caused by a child dropping her or by one fall from her car seat or a four-foot high wet bar.
The trial court sentenced appellant to five years incarceration, the maximum sentence, and ordered her to have no involvement with child care in the future.
Appellant timely appealed, raising three assignments of error for our review. For analytical purposes, we consider appellant's second assignment of error first.
Appellant's second assignment of error states:
 II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT HEARD EVIDENCE ON THE INTENTIONAL CAUSE OF THE INJURIES TO THE VICTIM.
In her second assignment of error, appellant contends that the trial court erred in hearing evidence at the sentencing hearing regarding the cause of Charis' injuries. Specifically, appellant objects to the following colloquy between the prosecutor and Dr. Evans:
 Q. Have you treated other patients who have been diagnosed with shaken baby syndrome?
A. Yes, I have.
Q. And are you familiar with shaken baby syndrome?
A. Yes, I am.
 Q. And can a fall from a car seat, if a car seat flips over to the floor, can that cause shaken baby syndrome?
A. No.
 Q. Can a fall from a four-foot bar cause shaken baby syndrome?
A. No.
Q. Could a child holding her —
A. No.
 Q. — dropping her to the floor cause the injuries that you
A. Absolutely not.
Q. — found?
 A. No. This child had flamed hemorrhages in her eyes. She had flamed hemorrhages which are, if you shook an egg, it would be trying to shake the egg yolk so it ruptured. It had to have that much force that the blood vessels in the eye actually ruptured. * * *
Q. What kind of force does it take?
 A. Tremendous amount of force and back and forth to break those blood vessels inside where they are located.
Q. Would rocking her car seat at day care cause that?
 A. No. People do that all the time, everyday. I mean, I can't tell you how many times people come in saying, my baby fell out of the bed or they fell off the table. But this is not a result of one fall off of a table or bed or car seat.
Appellant contends that this testimony was improper because it was elicited to demonstrate that appellant intentionally injured Charis. Appellant asserts that the State gave up the opportunity to prove an intentional mens rea, however, when it amended the charge and allowed appellant to plead guilty to an offense involving a mental state of recklessness.
Initially, we note that appellant did not object to Dr. Evans' testimony and, therefore, has waived all but plain error. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. To constitute plain error, the error must be obvious on the record, palpable and fundamental, so that it should have been apparent to the trial court without objection. State v. Ross (Oct. 12, 2000), Cuyahoga App. No. 77126, unreported, citing State v. Tichon (1995),102 Ohio App.3d 758. Plain error does not exist unless it can be said that but for the error, the outcome * * * would clearly have been otherwise. State v. Nicholas (1993), 66 Ohio St.3d 431, 436, quoting State v. Moreland (1990), 50 Ohio St.3d 58, 62. We find no such plain error here.
R.C. 2929.11(A) provides that a court that sentences an offender for a felony, as in this case, shall be guided by the overriding purposes of felony sentencing. These purposes are to protect the public from future crime by the offender and others and to punish the offender. In addition, R.C. 2929.11(B) requires that:
 A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.
R.C. 2929.12 further provides that when a mandatory prison term is not required, as in this case, a trial court sentencing a felony offender has discretion to determine the appropriate sentence based upon its consideration of the seriousness of the offense and the offender's likelihood of recidivism. It is apparent, therefore, that in order to determine what prison term was necessary to punish appellant, consistent with the seriousness of her offense, the trial court properly heard testimony from Dr. Evans regarding how appellant caused the baby's injuries.
Appellant correctly asserts that recklessness, rather than an intentional state of mind, is an essential element of the offense of child endangerment under R.C. 2919.22(A), to which appellant pled guilty, State v. McGee (1997), 79 Ohio St.3d 193, syllabus. Appellant's assertion that Dr. Evans' testimony was somehow improper because it demonstrated that appellant acted intentionally, rather than recklessly, is without merit, however.
First, the State did not give up an opportunity to prove that appellant acted intentionally when it amended the charge because the offense of child endangerment under R.C. 2919.22(B) with which appellant was originally charged also contains the element of recklessness. State v. O'Brien (1987), 30 Ohio St.3d 122.
Moreover, the State's questions of Dr. Evans were not designed to demonstrate that appellant acted intentionally but to demonstrate the type of force used to cause the victim's injuries so that the trial court could perform its mandated assessment of appellant's conduct. Appellant gave three different accounts of how Charis was injured. Dr. Evans' testimony refuted each of appellant's varying accounts, however, and indicated that appellant's offense was far more serious than appellant acknowledged either to the police, the court, or it appears, even to herself. Indeed, Dr. Evans' testimony indicated that appellant, in all likelihood, acted intentionally, rather than recklessly. The fact that Dr. Evans' testimony differed from appellant's does not affect the propriety of her testimony.
Appellant's second assignment of error is therefore overruled.
Appellant's first assignment of error states:
 I. TRACIE HARDEN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN HER COUNSEL FAILED TO OBJECT TO TESTIMONY AS TO THE INTENTIONAL CAUSE OF THE VICTIM'S INJURIES.
In her first assignment of error, appellant contends that she was denied her constitutionally guaranteed right to effective assistance of counsel because her lawyer did not object to Dr. Evans' testimony that the victim's injuries were caused by intentional shaking.
In order to establish ineffective assistance of counsel, a defendant must demonstrate that his or her counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011. There are countless ways for an attorney to provide effective assistance in a given case and we must give great deference to counsel's performance. Strickland v. Washington (1984), 466 U.S. 668, 689. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. * * *. Id.
We have already concluded that the trial court did not err in considering Dr. Evans' testimony that the victim's injuries were caused by intentional shaking. Accordingly, trial counsel's failure to object to this testimony was not deficient.
Moreover, we note that appellant's counsel cross-examined Dr. Evans regarding the chronic subdural hematomas discovered upon Charis' admission to the hospital on May 11, 2000. He also questioned Dr. Evans regarding whether Charis' vomiting in the week prior to the incident of May 11, 2000 was a symptom of an earlier head injury. Counsel also elicited testimony from Dr. Evans that Charis had not been in the exclusive care of appellant in the days preceding her admission to the hospital. Counsel's obvious strategy, therefore, was to demonstrate that Charis' injuries could have been caused by someone other than appellant. Trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49, certiorari denied (1980), 449 U.S. 879.
Appellant's first assignment of error is therefore overruled.
Appellant's third assignment of error states:
 THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE PURSUANT TO R.C. SECTION 2929.14(C) WHERE IT DID NOT SET FORTH FACTORS SUPPORTING THAT THE APPELLANT COMMITTED THE WORST FORM OF THE OFFENSE OR THAT THE APPELLANT POSED THE GREATEST LIKELIHOOD OF COMMITTING FUTURE CRIMES.
In her third assignment of error, appellant contends that the trial court erred in imposing the maximum sentence.
A trial court has broad discretion in sentencing a defendant. State v. Yontz (1986), 33 Ohio App.3d 342. Pursuant to R.C. 2953.08(G)(1), an appellate court may modify or vacate a sentence imposed under Senate Bill 2 only if it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law.
Pursuant to R.C. 2929.14(B), if a defendant has not previously served a prison term, as in this case, the trial court must impose the minimum sentence unless it specifies on the record that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender:
 [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
In addition to making these findings before imposing a maximum sentence, the trial court, pursuant to R.C. 2929.19(B)(2)(d), must also state the reasons that support its finding. State v. Parker (June 7, 2001), Cuyahoga App. Nos. 78257, 78809, unreported. Appellant contends that the trial court erred in sentencing her because it did not give reasons to support its findings. We disagree.
In imposing the maximum sentence, the trial court stated:
 The court would initially predicate its remarks this afternoon by indicating, in a subjective way, that no matter how long one's involved in the system, sentencing is a difficult process, at its best.
 The court would also note that Defendant has significant support in the community and the court is nevertheless compelled by statements of the witnesses this afternoon, presentence investigation report and the plea of the Defendant, to initially make the following findings: there was, clearly, great physical harm that occurred to the victim in this case; that the injury to the victim was worsened by the age of the victim at the time of the injury; that she, clearly, suffered serious physiological and physical harm as a result of the acts in this case and, the relationship with the victim facilitated the acts and injuries in this case.
 The court notes that the injuries that were caused in this case, short of actual death, are among the most serious that can be comprehended, at least in the mind of the court.
 And, the court therefore makes the following findings; based on the foregoing analysis, a term of incarceration is indicated in this case. Moreover, that a minimum term would demean the seriousness of the offense and would not adequately protect the public; moreover, that this particular harm caused by this particular offense requires a five-year period of incarceration at the Ohio State Reformatory for Women. And, Defendant is ordered not to involve herself with childcare in the future.
The trial court clearly found, pursuant to R.C. 2929.14(B), that a minimum term of incarceration would demean the seriousness of appellant's offense. Moreover, the trial court gave its reasons for finding that the seriousness of appellant's offense warranted a maximum sentence, most notably that the injuries caused in the case, short of actual death, are among the most serious that can be comprehended.
The trial court properly sentenced appellant to the maximum sentence allowed by law. Appellant's third assignment of error is therefore overruled.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J. and FRANK D. CELEBREZZE, JR., J., CONCUR.