OPINION
{¶ 1} On January 10, 2005, Demeka Brown was involved in an automobile accident. Dayton Police Officer, Jeff Hieber, was dispatched to the scene where he spoke to Brown and the other driver involved in the accident. The officer also spoke to Bridgette Young, a witness inside a nearby muffler shop. Thereafter, Hieber decided to issue a citation to Brown.
 {¶ 2} Brown became upset at Hieber's decision to cite her. She refused to sign or accept the citation. At some point, Brown and her mother, Edith Brown, entered the muffler shop where Brown confronted Young. An argument ensued between Brown and Young. The store owner and an employee asked Brown and her mother to leave the premises. However, the women did not comply. Then Officer Hieber re-entered the shop and asked Brown and her mother to leave. When Brown did not comply, Hieber called for backup and again told Brown and her mother to leave the store. When the women again failed to comply, Hieber placed his hand on Edith Brown's elbow and began to escort her out the door of the shop. Brown then jumped on Hieber causing all three to fall through the doorway onto the pavement outside the shop. While on the pavement, Brown grabbed Hieber by the arms and bit him on the thumb.
 {¶ 3} Brown was indicted on one count of assault of a police officer. The matter was tried to a jury. During the State's case in chief, the State called Bridgette Young as a witness. At that point it was determined that Young had been present in court during the State's examination of Hieber, the muffler store owner and one of the store employees. The trial court noted that it had ordered the separation of witnesses, but concluded that Young had not been aware of the trial court's order. The trial court concluded that the failure to comply had been inadvertent. Nonetheless, the trial court did not let Young testify during the State's case in chief. However, following the close of Brown's evidence, the trial court decided that it would let the State present Young as a rebuttal witness to the testimony of Brown and her mother since Young had not been present in the courtroom during their testimony.
 {¶ 4} Also during trial, Brown raised the affirmative defense of defense of others. This defense was based upon her claim that she believed Hieber would injure her mother when he, as she testified, "threw" her mother out of the muffler store. In an attempt to bolster this claim, defense counsel repeatedly questioned witnesses in a manner which insinuated that Hieber acted illegally when he touched Brown without formally arresting her. Following the close of Brown's evidence, the trial court informed the prosecutor and defense counsel that, due to defense counsel's statements, the court was concerned the jury might be confused and that it might erroneously conclude "that unless and until someone is under arrest an officer may not go ahead and take some kind of action." The court indicated that it would attempt to craft a jury instruction with regard to this issue. Thereafter during closing, defense counsel persisted in arguing that Hieber acted improperly despite being instructed twice to stop.
 {¶ 5} Following trial, Brown was convicted as charged and sentenced accordingly. She now appeals from her conviction.
 FIRST ASSIGNMENT OF ERROR {¶ 6} "THE TRIAL COURT'S IMPROPER INSTRUCTION TO THE JURY REGARDING A POLICE OFFICER'S POWER TO PLACE HIS HANDS ON SOMEONE WITHOUT FIRST PLACING THEM UNDER ARREST WAS INCORRECT, IRRELEVANT AND SO HEAVILY PREJUDICIAL AS TO DENY APPELLANT A FAIR TRIAL."
 {¶ 7} Brown contends that the trial court erred when it included the following statement in the jury instructions: "[t]here is no legal requirement that an officer arrest someone before placing his hands, in this case, upon someone, else, being Edith Brown." Brown claims that this instruction gave the jury the incorrect impression that Officer Hieber "was permitted to touch Edith Brown in whatever manner he wished, regardless of whether she was under arrest" and that this instruction, thus, led the jury to believe that Demeka Brown was not entitled to assert the defense of others as an affirmative defense.
 {¶ 8} We review this assignment under plain error because trial counsel failed to raise an objection to the inclusion of the above-cited sentence.[1] "In the absence of plain error within the meaning of Crim.R. 52(B), `[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" State v. Tichon
(1995), 102 Ohio App. 3d 758, 767, citations omitted. "In order to constitute plain error, an error must be obvious and have a substantial adverse impact on the integrity of and the public's confidence in judicial proceedings." Id. "The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects `the fairness, integrity or public reputation of judicial proceedings.'" Id.
 {¶ 9} We find no error, let alone plain error, in the trial court's instruction as the instruction is a correct statement of law. Clearly an officer can have physical contact with a person without placing them under arrest. In fact an officer, in the course of an investigation, has the right to detain an individual by handcuffing that person without formally placing the individual under arrest. See, State v. Payne (May 4, 1994), Montgomery App. No. 13898. The only question is whether the method of detention is "reasonable under the circumstances." Id. Under the circumstances of this case, Hieber acted reasonably in attempting to escort Edith Brown from the muffler shop. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 10} "THE TRIAL COURT ERRED AS MATTER OF LAW WHEN IT ALLOWED THE STATE'S REBUTTAL WITNESS TO TESTIFY DESPITE THE STATE OFFICER'S FAILURE TO EXCLUDE THE WITNESS FROM THE COURTROOM DURING ITS CASE IN CHIEF AND IN VIOLATION OF THE COURT'S ORDER."
 {¶ 11} Brown contends that the trial court erred by permitting the State to call Bridgette Young as a witness on rebuttal despite the fact that she had been in the courtroom during the State's case in chief and thus had failed to comply with the trial court's order regarding separation of witnesses.
 {¶ 12} Evid.R. 615 states, in pertinent part, that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." The purpose of the rule for separation of witnesses is to "prevent a witness from shaping or fabricating his testimony to conform to testimony previously given." State v. Hall, Franklin App. No. 04AP-1242, 2005-Ohio-5162, ¶ 62. This court has previously noted that "[i]t is within the trial court's discretion whether to allow a witness who has violated a separation order to testify."In re Adoption of Jimenez (1999), 136 Ohio App. 3d 223, 231. With regard to a criminal defendant's witnesses, the court may refuse to allow a witness who has violated a separation order to testify where the violation was by procurement or connivance of the party calling the witness. Dickson v. State (1883),39 Ohio St. 73.
 {¶ 13} In this case, the record indicates that the State was not aware that its witness was in the courtroom in violation of the exclusion order. Indeed, the trial court noted that the mistake was inadvertent. Since the trial court was in the best position to judge the credibility of the prosecutor and the witness, we defer to its findings in this regard and also note that the record does not refute this finding. Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 14} We further note that the purpose of permitting Young to testify on rebuttal was to refute testimony provided by Brown and her mother, whose testimony Young did not hear or observe. Thus, we cannot say that permitting Young's testimony in rebuttal violated the stated purpose of the rule for separation of witnesses.
 {¶ 15} Finally, we note that the record is not clear with regard to whether any such order was actually issued by the trial court. Instead, it appears that the trial court merely mentioned that Brown's mother should be excluded from the court room until she was called to testify.
 {¶ 16} We conclude that the trial court's decision to permit Young to testify was not error and did not constitute an abuse of discretion. Therefore, the second assignment of error is overruled.
 {¶ 17} The judgment of the trial court is affirmed.
Grady, P.J., and Donovan, J. concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] We note that our review of the record before us reveals that no objection was raised with regard to this instruction. Trial counsel has attached an affidavit to his appellate brief in which he avers that he raised an objection to this instruction. However, counsel's affidavit does not constitute the record for purposes of appeal. See, App.R. 9(A). Nor does this affidavit comport with the provisions for supplementing a record on appeal.