[Cite as *In re D.P.*, 2025-Ohio-95.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: D.P.

C.A. No.     31144

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DL 23 08 0804

DECISION AND JOURNAL ENTRY

Dated: January 15, 2025

CARR, Judge.

{¶1}    Appellant, D.P., appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division.  This Court affirms.

I.

{¶2}    On August 31, 2023, a complaint was filed in the juvenile court alleging that D.P., who qualified as a delinquent child pursuant to R.C. 2152.02(E), had engaged in conduct that was sufficient to establish the elements of criminal damaging.  The complaint specified that D.P. had cut off his GPS tracking device, causing the device to no longer function properly.  The complaint further alleged that the value of the GPS tracking device was $575 and that the value of the device's strap was $25.  D.P. ultimately admitted to the count as alleged, acknowledging that he cut off the GPS tracking device and threw it somewhere.  D.P. was placed on traditional probation for six months and ordered to make restitution in an amount to be determined by the juvenile court.

{¶3} The matter proceeded to a restitution hearing before a magistrate. Based on the evidence presented at the hearing, the magistrate issued a decision ordering D.P. to pay restitution in the amount of $600. The trial court adopted the magistrate's decision the same day that it was journalized. D.P. filed timely objections to the magistrate's decision. D.P. then filed a supplemental brief in support of the objections after obtaining the transcript. Thereafter, the trial court issued a decision overruling D.P.'s objections.

{¶4} On appeal, D.P. raises three assignments of error.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DETERMINING [THAT A VICTIM'S ECONOMIC LOSS FOR DETERMINING] RESTITUTION IS MEASURED BY FULL REPLACEMENT VALUE, RATHER THAN FAIR MARKET VALUE, IN VIOLATION OF R.C. 2152.20(A)(3).

### ASSIGNMENT OF ERROR II

THE TRIAL COURT VIOLATED THE JUVENILE'S DUE PROCESS RIGHTS AND COMMITTED REVERSIBLE ERROR WHEN ORDERING THE JUVENILE TO PAY RESTITUTION AS THAT DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5} In his first assignment of error, D.P. argues that the trial court erred in the manner in which it determined the amount of restitution in this case. In his second assignment of error, D.P. argues that the amount of restitution awarded by the trial court was not supported by the weight of the evidence. This Court disagrees with both propositions.

### Background

{¶6} As noted above, the complaint specified that the GPS tracking device and the attendant strap had a value of $600. After D.P. admitted to the underlying conduct alleged in the complaint, the trial court set the matter for a restitution hearing.

{¶7} Terrance Dukes, who serves as a caseworker at Oriana House, was the sole witness to testify at the restitution hearing. Mr. Dukes explained that one of his primary responsibilities at Oriana House is to monitor juveniles who are subject to GPS tracking. D.P.'s case was part of Mr. Dukes' caseload. Mr. Dukes filed the complaint in this matter after D.P. destroyed the strap and the GPS tracking device was never returned. The complaint was introduced as an exhibit at the hearing, along with a financial summary form detailing the costs associated with D.P.'s electronic monitoring. In the section labeled, "Money Owed to Oriana House Inc.[,]" the form indicated that the cost of the GPS tracking device was $575 and the cost of the strap was $25. Mr. Dukes testified that the cost of every GPS device is the same. Mr. Dukes explained that, because the strap was cut and the GPS tracking device was not returned, it was necessary for Oriana House to replace both items. Mr. Dukes emphasized that the replacement cost of those items is always the same, regardless of who was wearing them or how they were destroyed.

{¶8} On cross-examination, Mr. Dukes testified that he prepared the financial summary form attached to the complaint after buying the replacement items. Mr. Dukes testified that Oriana House buys all of its electronic monitoring equipment from a company called Sentinel. When counsel inquired as to whether the items purchased from Sentinel were brand new, Mr. Dukes responded in the affirmative. Mr. Dukes was uncertain as to how old the items were at the time they were destroyed. When asked whether he knew the fair market value of the items at the time they were destroyed, Mr. Dukes responded, "I do not." On re-direct examination, Mr. Dukes testified that it is always necessary to purchase replacement GPS tracking devices when they are not returned so that Oriana House is able to monitor other individuals. The cost of replacing the monitoring equipment is kept in the ordinary course of business. In conclusion, Mr. Dukes

reiterated that the cost of every GPS tracking device is the same and, in his experience, there are "[n]o changes, no additions, no deletions to the cost[.]"

{¶9} After the hearing, the magistrate issued a decision ordering D.P. to pay restitution in the amount of $575 for the GPS tracking device and $25 for the strap, for a total of $600. The magistrate found that, based on Mr. Dukes' testimony at the hearing, the items in question had to be replaced in order to make Oriana House whole. In regard to D.P.'s argument that restitution should be determined using the fair market value of the items, instead of the replacement value, the magistrate noted that the items in question were distinct from the examples cited by D.P., such as vehicles. The magistrate further observed that because the GPS tracking device was not returned, it would not be possible to determine the fair market value of that item. The juvenile court adopted the magistrate's decision the same day it was issued.

{¶10} D.P. filed timely objections to the magistrate's decision. D.P.'s primary objection was that the amount of Oriana House's economic loss should have been calculated using the fair market value of the items instead of the replacement value. D.P. filed a related objection on the basis that because the State failed to present any evidence as to the fair market value of the items, the magistrate's restitution order was against the manifest weight of the evidence.

{¶11} In its journal entry overruling D.P.'s objections, the juvenile court found that D.P. had not cited any binding authority for the proposition that the magistrate was required to conduct a fair market value analysis for the type of property at issue in this case. The juvenile court ultimately overruled D.P.'s first objection on the basis that the manner in which the magistrate determined the amount of restitution in this case was consistent with the language set forth in R.C. 2152.20(A)(3). The juvenile court also overruled D.P.'s second objection on the basis that a review of the evidence presented at the hearing did not support D.P.'s manifest weight claim.

Fair Market Value Argument

{¶12} In his first assignment of error, D.P. argues that the trial court's restitution order must be reversed because the victim's economic loss was calculated by using the replacement value of the GPS tracking device and the attendant strap, as opposed to the fair market value of those items.

{¶13} The instant appeal focuses on the trial court's orders that adopted the magistrate's decision and overruled D.P.'s objections to the magistrate's decision. In reviewing and ruling on D.P.'s objections, the juvenile court conducted an independent review of the record pursuant to Juv.R. 40(D)(4)(d). Generally, "[t]his Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion." *Tabatabai v. Tabatabai*, 2009-Ohio-3139, at ¶ 17 (9th Dist.).[1] Under an abuse of discretion standard of review, this Court must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai* at ¶ 18.

{¶14} R.C. 2152.20(A)(3) provides, in pertinent part, that if a child is adjudicated a delinquent child, the juvenile court may "require the child to make restitution to the victim of the child's delinquent act . . . in an amount based upon the victim's loss caused by or related to the delinquent act[.]"

> "Economic loss" means any economic detriment suffered by a victim of a delinquent act or juvenile traffic offense as a direct and proximate result of the delinquent act or juvenile traffic offense and includes any loss of income due to lost time at work because of any injury caused to the victim and any property loss, medical cost, or funeral expense incurred as a result of the delinquent act or juvenile

---

[1] Although *Tabatabai* involved Civ.R. 53 as opposed to Juv.R. 40, we note that the procedural framework set forth in Civ.R. 53(D) is analogous to Juv.R. 40(D). *See generally In re T.S.*, 2012-Ohio-858, ¶ 8 (9th Dist.).

traffic offense. "Economic loss" does not include non-economic loss or any punitive or exemplary damages.

R.C. 2152.02(K).

{¶15} In support of his first assignment of error, D.P. maintains that the restitution order in this case was erroneous because it failed to account for the depreciation and fair market value of the GPS tracking device and its strap. D.P. cites a number of cases involving vehicles, as well as one case involving items destroyed by arson, in support of his position that the calculation of economic loss should account for the depreciation in value of the items that were lost or destroyed. By way of hypothetical, D.P. argues that a juvenile who destroyed a late-model smartphone would not be ordered to pay a restitution amount equivalent to the cost of a brand-new smartphone. D.P. further contends that the juvenile court erred in relying on *State v. Presutto-Saghafi*, 2019-Ohio-5373 (9th Dist.), in overruling his objections. In addition to the fact that *Presutto-Saghafi* involved a restitution order for an adult defendant, D.P. suggests that the juvenile court misconstrued the decision's core holding, which was that a restitution order must bear a reasonable relationship to the loss suffered by the victim.

{¶16} D.P.'s argument regarding the methodology used to determine the amount of restitution fails to account for the unique circumstances presented by this case. While D.P. points to items that have a discernable fair market value, such as smartphones and vehicles, this case involved a GPS tracking device used by Oriana House to monitor individuals who are on probation. Mr. Dukes testified that Oriana House works with a company called Sentinel to ensure that it has reliable monitoring equipment. Mr. Dukes further explained the process of replacing the GPS tracking devices is always the same, regardless of how the devices are destroyed or lost. In specific regard to this case, Mr. Dukes testified, that as a result of D.P.'s delinquent acts, Oriana House

incurred an economic loss totaling $600.  *See* R.C. 2152.20(A)(3).  It follows that D.P.'s argument pertaining to the methodology used to calculate restitution in this case is without merit.

**{¶17}**  Furthermore, D.P.'s argument with respect to *Presutto-Saghafi* is not well-taken. In *Presutto-Saghafi*, this Court cited *State v. Henderson*, 2013-Ohio-2798, ¶ 7 (9th Dist.), for the proposition that "[t]here must be competent, credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty, and the amount ordered must bear a reasonable relationship to the loss suffered by the victim."  *Presutto-Saghafi* at ¶ 11. This Court observed that the reasonable relationship standard exists to ensure that victims do not receive a windfall.  *See Presutto-Saghafi* at ¶ 16.  Although D.P. protests on the basis that the juvenile court cited a portion of the *Presutto-Saghafi* decision pertaining to considering estimates on replacing property when determining restitution, a careful review of the juvenile court's order overruling D.P.'s objections makes clear that the juvenile court's analysis was aimed at ensuring that the $600 restitution order bore a reasonable relationship with the loss suffered by Oriana House.  In addition to highlighting Mr. Dukes' explanation regarding why it was necessary to purchase items to replace those that were not returned, the juvenile court found that Mr. Dukes gave credible testimony as to the cost of obtaining those items.  Accordingly, we are not persuaded that the juvenile court misapplied this Court's *Presutto-Saghafi* decision in overruling D.P.'s objections.

**{¶18}**  D.P.'s first assignment of error is overruled.

Manifest Weight Argument

**{¶19}**  In his second assignment of error, D.P. argues that the restitution order was against the weight of the evidence.  D.P. maintains that "in accordance with his first assignment of error, [] the trial court impermissibly based restitution on the full replacement value of the GPS unit and

its strap, rather than its fair market value, and therefore used the wrong methodology in arriving at the $600.00 figure." It follows, D.P. contends, that the restitution order should be reversed because the State failed to present evidence establishing the fair market value of the items.

{¶20} D.P.'s manifest weight argument is without merit. As an initial matter, this Court has determined that the juvenile court did not deploy an improper methodology in determining the amount of restitution in this case. *See* Discussion of Assignment of Error I, *supra*. Moreover, at the restitution hearing, the State presented ample evidence establishing the economic loss suffered by Oriana House. Specifically, the State demonstrated that D.P.'s delinquent acts resulted in Oriana House incurring an economic loss totaling $600. Under these circumstances, D.P. has not demonstrated that the juvenile court's restitution order was against the weight of the evidence.

{¶21} D.P.'s second assignment of error is overruled

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY FAILING TO CONSIDER IMPOSING A TERM OF COMMUNITY SERVICE UNDER R.C. 2152.20(D), IN LIEU OF IMPOSING A FINANCIAL SANCTION, DUE TO THE JUVENILE'S INDIGENCY.

{¶22} In his third assignment of error, D.P. argues that the juvenile court committed plain error when it failed to consider imposing community service in lieu of restitution pursuant to R.C. 2152.20(D). This Court disagrees.

{¶23} R.C. 2152.20(D) provides as follows:

If a child who is adjudicated a delinquent child is indigent, the court shall consider imposing a term of community service under [R.C. 2152.19(A)] in lieu of imposing a financial sanction under this section. If a child who is adjudicated a delinquent child is not indigent, the court may impose a term of community service under that division in lieu of, or in addition to, imposing a financial sanction under this section. The court may order the performance of community service to generate funds for restitution.

{¶24} A review of the record reveals that D.P. did not raise the issue of whether he was indigent for the purposes of restitution at the restitution hearing. In filing objections to the magistrate's decision, however, D.P. argued that the magistrate failed to consider imposing community service in lieu of a financial sanction on account of D.P.'s indigency. The juvenile court overruled D.P.'s objection on the basis that D.P. did not raise the indigency issue at the restitution hearing and, further, that the record does not contain any evidence indicating that the magistrate failed to consider R.C. 2152.20(D). On appeal, D.P. couches his argument in terms of plain error because the indigency issue was not raised at the restitution hearing and the trial court overruled his objection on that basis. D.P. effectively contends that the trial court committed plain error by not undertaking an analysis of the indigency issue despite the fact that the issue was not raised during the proceedings before the magistrate.

{¶25} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist. 1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 2004-Ohio-1067, ¶ 12 (9th Dist.).

{¶26} D.P. cannot prevail on his plain error claim. Generally speaking, a trial court is precluded from sustaining an objection to a magistrate's decision when the objection is rooted in an issue not properly raised before the magistrate. *See* Juv.R. 40(D); *JCASA v. Dean*, 2021-Ohio-380, ¶ 24 (8th Dist.), quoting *Abernathy v. Abernathy*, 2009-Ohio-2263, ¶ 12 (8th Dist.) (concluding that, under Civ.R. 53(D), "[w]here, as here, an objection raises an issue not presented

to or decided by the magistrate, the objecting party is improperly asking the court to reach a different decision based on a new ground[]"). In specific regard to this case, there is no evidentiary basis from which this Court can conclude that the trial court committed plain error with respect to the indigency question because the issue was not raised before the magistrate. To the extent D.P. argues that the trial court committed plain error by failing to consider the imposition of community service, particularly given that D.P. was represented by appointed counsel, we note that a juvenile court cannot be said to have violated R.C. 2152.20(D) if there is nothing in the record indicating that the court did not consider it. *In re J.G.*, 2013-Ohio-583, ¶ 13 (8th Dist.); *In re Boss B*, 2008-Ohio-2995, ¶ 22 (6th Dist.), *In re C.P.*, 2005-Ohio-1819, ¶ 16 (9th Dist.). Under these circumstances, D.P.'s third assignment of error is overruled.

### III.

**{¶27}** D.P.'s assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JAMISON JOHNSON, Guardian ad Litem.