JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, William R. King, appeals his convictions and subsequent sentencing for uttering, in violation of R.C. 2913.31; receiving stolen property, in violation of R.C. 2913.51; grand theft, in violation of R.C. 2913.02; and possessing criminal tools, in violation of R.C. 2923.24.
 {¶ 2} On April 19, 2002, William R. King, also known as Pickle Tate,[1] presented Direct Auto Wholesale ("Direct Auto"), a used car lot, with check number 773 in the amount of $6800 in exchange for the purchase of two passenger vehicles, a 1985 Mercedes 190E and a Chrysler 400. Joe Orlando, who no longer works for Direct Auto, was the salesman who negotiated and closed the purchase with King. According to the record, King purchased only the Mercedes; the sale of the Chrysler 400 was never completed.
 {¶ 3} The sales file for the 1985 Mercedes 190E obtained from Direct Auto contained a photostatic copy of King's drivers license. The sales file also contained the odometer statement, the power of attorney form, and the sales agreement, all of which were signed "Billy King." Additionally, the phone number written on the sales agreement belonged to Marilyn Barnes, William King's wife.
 {¶ 4} Detective Perchinske of the Solon Police Department testified that Joe Orlando, the salesman who sold King the Mercedes, identified a LEADS picture of William King as the person who bought the Mercedes and presented check number 773 for payment. Detective Perchinske had Joe Orlando sign and date the picture of King to establish his identification of King. Joe Orlando was unavailable at the time of trial because he had relocated to Orlando, Florida. Check number 773 belonged to Latonya Hamerter, who is employed by Nestle, Inc., located in Solon, Ohio. As part of her employment with Nestle, Ms. Hamerter belongs to the S.T.O.F.F.E. Credit Union. On April 23, 2002, the credit union notified her that check number 773 had been presented for payment against her account and an overdraft of $6,800 had occurred. Ms. Hamerter notified her credit union that she had written no such check, and a stop payment order was issued. When Ms. Hamerter examined her checkbook, she noticed that check numbers 773, 774, and 775 were missing.
 {¶ 5} From a picture of William King presented by Detective Perchinske, Ms. Hamerter identified King as Pickle Tate, the husband of Marilyn Barnes, a friend whose home she frequently visited. Ms. Hamerter also testified it was her habit to have her checkbook with her at all times. She further stated that she did not endorse check number 773, had no intention of purchasing a vehicle, and did not give check number 773 to William King for any purpose.
 {¶ 6} On August 9, 2002, King was arraigned on five charges stemming from the attempted purchase of the Mercedes automobile from Direct Auto Sales with a check belonging to Latonya Hamerter. King was charged with forgery, uttering, and grand theft of a vehicle, all felonies of the fourth degree. King was also charged with receiving stolen property and possession of criminal tools in connection with the check used to purchase the vehicle; both charges are felonies of the fifth degree. During trial, the State dismissed the charge of forgery. On September 30, 2002, King was found guilty by a jury on all remaining counts.
 {¶ 7} On October 1, 2002, the trial court, after reviewing King's prior convictions, sentenced him to 17 months for uttering, 11 months for receiving stolen property, 17 months for grand theft, and 11 months for possession of criminal tools. The sentences for uttering and grand theft were to run concurrent with each other. The sentences for receiving stolen property and possession of criminal tools were to run concurrently with each other.
 {¶ 8} The trial court then found that Latonya Hamerter had been separately victimized by the theft of her check and found consecutive sentences were warranted to protect the public. Thus, the sentence for receiving stolen property was run consecutive to the sentences for uttering and grand theft. King was sentenced to a total of 28 months in prison.
 {¶ 9} The appellant brings this timely appeal and presents three assignments of error for review.
 {¶ 10} "I. APPELLANT WAS IMPROPERLY PROHIBITED FROM CHALLENGING A WITNESS, IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT TO CONFRONT AND CROSS-EXAMINE THE WITNESS AGAINST HIM."
 {¶ 11} The appellant argues the trial court erred by allowing Detective Perchinske to testify as to what the Direct Auto salesman, Joe Orlando, told him regarding the April 19 sale of the Mercedes to the appellant. Joe Orlando was unavailable at trial because he had moved to Florida.
 {¶ 12} A review of the record indicates the appellant failed to object at trial to any of the testimony of Detective Perchinske regarding what Joe Orlando might have told him; therefore, in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166,661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83,656 N.E.2d 643.
 {¶ 13} In the instant matter, after reviewing the record, the only testimony elicited from Detective Perchinske regarding Joe Orlando was Orlando's identification of the LEADS color photograph of the appellant. Detective Perchinske simply stated that Orlando had identified the appellant as the man who purchased the 1985 Mercedes and gave him Ms. Hamerter's check number 773 for $6,800 in payment for the vehicle. The appellant did not object to the admissibility of the signed photograph of the appellant or to the Detective's testimony. Furthermore, other circumstantial evidence existed in the sales file, including a copy of the appellant's drivers license. This evidence also was not objected to because the appellant never denied buying the Mercedes or presenting check number 773 as payment.
 {¶ 14} Although the hearsay identification of the appellant's photograph was improper, we cannot find that the outcome of the trial would have been clearly different but for the admission of Detective Perchinske's testimony about Joe Orlando's identification of the appellant; therefore, the appellant's first assignment of error is overruled.
 {¶ 15} "II. The evidence was insufficient to support a finding of guilt as to the charges of uttering, receiving stolen property, grand theft or possession of criminal tools because the evidence did not establish that appellant knew the check was forged."
 {¶ 16} The appellant claims his convictions for uttering, receiving stolen property, grand theft, and possession of criminal tools should be reversed on the grounds of insufficient evidence because the state failed to establish the requisite element of knowledge for each offense. The appellant claims he did not know that Ms. Hamerter's check was forged.
 {¶ 17} In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 18} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at ¶ 2 of the syllabus.
 {¶ 19} More recently, in State v. Thompkins (1997),78 Ohio St.3d 380, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 20} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 [*387] S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560." Id. at 386-387.
 {¶ 21} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case.Cohen v. Lamko (1984), 10 Ohio St.3d 167.
 {¶ 22} R.C. 2901.22(B) defines when a defendant acts knowingly:
 {¶ 23} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 24} In the instant matter, it is undisputed that Ms. Hamerter's check was forged. The appellant used check number 773 in order to buy the 1985 Mercedes from Direct Auto Sales. Ms. Hamerter testified she had not given the appellant any of her checks, she had not authorized the appellant to buy a car, nor had she signed the check the appellant gave to Direct Auto Sales; therefore, through the defendant's actions and surrounding circumstances, it can be inferred that the appellant had the requisite knowledge and awareness to know Ms. Hamerter's check was forged and continued to use that instrument for criminal purposes.
 {¶ 25} We find through the appellant's actions and surrounding circumstances that he had the requisite knowledge to commit the crimes of uttering, grand theft, receiving stolen property, and possession of criminal tools. Since the appellant does not refute any other elements of the crimes for which he was convicted, our analysis is at an end; therefore, the appellant's second assignment of error is hereby overruled.
 {¶ 26} "III. The trial court erred by ordering consecutive sentences when it failed to make all of the necessary findings required by R.C. 2929.14(e)(4), and failed to give adequate reasons for the findings it did make."
 {¶ 27} In the appellant's final assignment of error, he claims the trial court erred when it ordered consecutive sentences and failed to give adequate reasons for the findings the trial court made. The sentences for uttering and grand theft were ordered to run concurrently for a total of 17 months. The sentences for receiving stolen property and possession of criminal tools were ordered to run concurrently for a total of 11 months. The trial court then ordered the sentences for uttering and grand theft to run consecutively to the sentences for receiving stolen property and possession of criminal tools for a total of 28 months of incarceration.
 {¶ 28} R.C. 2929.14(E)(4) governs the imposition of consecutive sentences and states in relevant part:
 {¶ 29} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 30} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 31} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 32} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 33} R.C. 2929.19(B)(2) provides that:
 {¶ 34} "The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 35} "* * *
 {¶ 36} "(c) If it imposes consecutive sentences under section 2929.12
of the Revised Code, its reasons for imposing the consecutive sentences."
 {¶ 37} Therefore, R.C. 2929.14(E)(4) requires the trial court to make at least three findings prior to sentencing an offender to consecutive sentences. Pursuant to R.C. 2929.19(B)(2), the trial court must also give the reasons behind its findings.
 {¶ 38} In the instant matter, we find the trial court complied with R.C. 2929.14 when imposing consecutive sentences on the appellant. First, the trial court found consecutive sentences were required in this case to protect the public from future crime or to punish the offender (Tr. at 337). Second, the trial court made a finding that the proposed consecutive sentences are not disproportionate to the seriousness of the offender's conduct (Tr. at 342). Third, the trial court made a finding that the proposed consecutive sentence is not disproportionate to the danger that the defendant poses to the public (Tr. at 345). Last, the trial court specified which of the three enumerated circumstances is present from R.C. 2929.14(E)(4)(a)-(c), selecting sections (b) and (c) as the reasons for consecutive sentences (Tr. 345-346).
 {¶ 39} In addition to making the above findings, the trial court is also required to give the reasons for its findings. Failure to sufficiently state the reasons for imposing consecutive sentences for convictions of multiple offenses constitutes reversible error. State v.Hoole (Nov. 8, 2001), Cuyahoga App. No. 79515. Merely reciting or tracking the statutory language in R.C. 2929.14 is not sufficient to comply with the mandate set forth in R.C. 2929.19 (B)(2) for consecutive sentences. Id.
 {¶ 40} The trial court stated the following reasons for imposing consecutive sentences. First, the appellant has an extensive criminal history containing six prior cases in Cuyahoga County as well as the fact that the appellant was currently on federal probation and had numerous federal convictions. The court also noted that the defendant had served a prior prison term.
 {¶ 41} Second, the court stated that multiple victims, Direct Auto and especially Ms. Hamerter, were victimized by the appellant's actions. Ms. Hamerter's checking account with the S.T.O.F.F.E. credit union was closed and the credit union would not allow her to open a new account. Ms. Hamerter's finances were in ruin, she had a black mark on her credit, and she had to pay all the late fees and overdraft charges caused by the appellant's actions.
 {¶ 42} Third, at the sentencing hearing, the court found that the appellant's uncooperative attitude, complete and utter lack of remorse for the crimes he committed, lack of respect for the trial court, and the fact that the appellant blames the State of Ohio instead of himself for his crimes also support the imposition of consecutive sentences.
 {¶ 43} We conclude the trial court's findings and reasons for consecutive sentences were proper; therefore, appellant's third assignment of error is overruled.
 {¶ 44} We note as plain error that the trial court record is devoid of a discussion about post release control. The trial court did not inform the appellant he was subject to post release control as a consequence for violation. Therefore, since post release control was not mentioned at the sentencing hearing by the court, it is not part of the appellant's sentence, and he is not subject to it upon release from prison. We therefore remand this case to the trial court to correct the sentencing journal entry to properly reflect what occurred during the sentencing hearing.
Judgment affirmed; case remanded.
This cause is affirmed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Anne L. Kilbane, P.J., and James J. Sweeney, J., Concur.
[1] Detective Perchinske of the Solon Police Department testified at trial that the appellant has many aliases, including Billy King, Pickle Tate, Billy Kingel, Billy King-L, and Billy Tate.