DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Richard Curtis Evans ("Evans"), appeals from the decision of the Wayne County Common Pleas Court. This Court affirms.
 I. {¶ 2} In the early morning hours of August 11, 2006, a trailer was broken into and several guns were stolen. Detective Lemmon of the City of Wooster Police Department began investigating the break-in after he was contacted by a man who informed him that Evans, along with other individuals, had broken into the trailer. Detective Lemmon was informed that Evans and a woman named GG were attempting to sell the guns, and that they drove a silver Volkswagen Jetta. From this information, Detective Lemmon, while acting undercover, set up a meeting with Evans and GG. Officers conducting surveillance on the meeting site noted that the silver Volkswagen Jetta arrived at the meeting site and then left. Officers stopped the vehicle and located Evans in the vehicle along with Joshua Stanley and GG. Officers also located two *Page 2 
guns in the vehicle, which were identified as belonging to Stanley's step-father. Evans was eventually indicted and acquitted of receiving stolen property with respect to these guns.
 {¶ 3} Stanley took Detective Lemmon to an apartment at 1784 Normandy Drive. Detective Lemmon obtained the owner's consent and searched the home. The search revealed six guns that were stolen from the trailer on August 11, 2006.
 {¶ 4} Evans was indicted on one count of burglary, in violation of R.C. 2911.12, one count of theft, a violation of R.C. 2913.02, and one count of having weapons under a disability, in violation of R.C. 2923.13. On October 29 and 30, 2007, the case proceeded to a jury trial. The jury found Evans guilty on all the charges, and on November 6, 2007, he was sentenced to a total of ten years of incarceration. Evans has timely appealed from his conviction and sentencing, raising five assignments of error for our review. We have combined some of Evans' assignments of error for ease of review.
 II. ASSIGNMENT OF ERROR I "EVANS (SIC) CONVICTION IS CONTRARY TO THE DUE PROCESS CLAUSE OF THE OHIO AND UNITED STATES CONSTITUTION IN THAT HE WAS PLACED IN DOUBLE JEOPARDY DUE TO BEING TRIED PREVIOUSLY ON THE SAME EVIDENCE AND SIMILAR FACTS."
 {¶ 5} In his first assignment of error, Evans contends that his conviction was contrary to the due process clause of the Ohio and United States Constitutions in that he was placed in double jeopardy due to being tried previously on the same evidence and similar facts.
 {¶ 6} Initially, we note that Evans did not raise this issue at trial. In State v. Messer (1995), 107 Ohio App.3d 51, we stated that: *Page 3 
 "Failure to raise an apparent constitutional claim at trial operates as a waiver of that claim. State v. Awan (1986), 22 Ohio St.3d 120, 123, 202-203 . Although appellate courts have the discretion to review claims when they are not raised below, that discretion ordinarily is not exercised where the right to be vindicated was in existence prior to or at the time of trial." Id. at 58.
 {¶ 7} Further, Crim. R. 12(C)(2) requires that any objections and defenses based on defects in the indictment, must be raised prior to trial. Accordingly, if a defendant fails to raise an issue regarding the indictment prior to trial, he has waived the objection. Crim. R. 12(H). By continuing to trial despite this claim, Evans waived any objection he may have had to any defects in the indictment. Accordingly, Evans' first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 ASSIGNMENT OF ERROR III "THE COURT CREATED PREJUDICIAL ERROR WHEN IT REFUSED TO GRANT EVANS' RULE 29 MOTION ON THE WEAPONS UNDER A DISABILITY CHARGE."
 {¶ 8} In his second and third assignments of error, Evans contends that his convictions were against the manifest weight of the evidence and that his conviction for weapons under a disability was not based on sufficient evidence. We do not agree.
 {¶ 9} Crim. R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim. R. 29(A) if the record demonstrates "that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. *Page 4 
 {¶ 10} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 11} Therefore, we will address Evans' claim that his convictions were against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 12} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 13} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 14} In the instant case, Evans was convicted of one count of burglary, in violation of R.C. 2911.12, one count of theft, a violation of R.C. 2913.02, and one count of having weapons under a disability, in violation of R.C. 2923.13.
 {¶ 15} Pursuant to R.C. 2911.12(A)(3) "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or *Page 5 
separately occupied portion of the structure any criminal offense[.]" Theft is defined in R.C. 2913.02. R.C. 2913.02(A) states, in part, that
 "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception[.]"
 {¶ 16} Having weapons under disability is defined in R.C. 2923.13(A)(3). This section states:
 "[u]nless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."
 {¶ 17} The State called Virgil Briggs, the owner of the stolen guns, to testify. He testified that Dwayne Witmer helped him move into his new trailer home. He testified that during the early morning hours of August 11, 2006, his trailer home was broken into and some of his guns and a bow were missing. He testified that no one had permission to enter his home and no one had permission to take the weapons. Briggs testified that he contacted the police and that some of his guns were later found and returned to him. He identified the guns from photographs that were entered into evidence.
 {¶ 18} The State next called City of Wooster Police Officer, Matt Smucker. Officer Smucker testified that on August 11, 2006, he was dispatched to Briggs' trailer to investigate a reported burglary. Officer Smucker testified that the glass on the back door had been pushed in. *Page 6 
 {¶ 19} The State next called Brian Pickens, Briggs' neighbor. Pickens testified that in the early morning hours of August 11, 2006, he heard a loud car and several doors opening and closing. When he looked out his window he saw what appeared to be a Chevy Camaro.
 {¶ 20} The State next called City of Wooster Police Officer, Donald Hall. Officer Hall testified that on August 21, 2006, he assisted Detective Lemmon on an undercover investigation to purchase stolen firearms by conducting surveillance. He testified that the meeting was to take place in the trailer park where Briggs' trailer was located. Officer Hall explained that he was informed that he was waiting for a grey Volkswagen. Officer Hall testified that at approximately 5:45 a.m. on August 21, 2006, a grey Volkswagen Jetta pulled into the trailer park and stayed for approximately five minutes. After the vehicle left, it was stopped by marked police cruisers. Officer Hall testified that he went to the traffic stop, and then went to an apartment on Normandy Drive to recover weapons. He testified that the weapons were located in a closet.
 {¶ 21} The jury next heard from Quinn McConnell of the Wooster Police Department. Officer McConnell testified that on August 21, 2006, he assisted with Detective Lemmon's investigation into the stolen weapons. Officer McConnell was in a marked police car and participated in the traffic stop of the Jetta. Officer McConnell testified that there were three occupants in the vehicle. He explained that Josh Stanley was the driver and owner of the vehicle, and that Jeanetta Todd Stewart (aka "GG") and Evans were passengers. Officer McConnell testified that he searched the vehicle and located two guns in the trunk. Officer McConnell testified that after the traffic stop, he went to an apartment on Normandy Drive. Officer McConnell testified that several guns and a cross bow were found in a closet. Officer McConnell met with Briggs, and Briggs indicated that six of the guns and the cross bow found in the Normandy Drive apartment belonged to him and were previously reported stolen. *Page 7 
 {¶ 22} The State next called Joshua Stanley. Stanley testified that he knew Evans through friends and had "hung out with him a couple of times." He then identified him in court. Stanley testified that on August 21, 2006, he was with Evans, at Stanley's home, doing drugs. Stanley stated that he took some guns from his home to sell for money to buy more drugs. Stanley testified that they stopped at an apartment on Normandy Drive, but he was not sure if it was "for money or guns or drugs." He explained that he was driving himself, Evans and a woman that he knew only as GG. Stanley testified that Evans got out of the car and ran to the apartment but no one answered the door. From Normandy Drive, Stanley drove to the trailer park, to meet with someone to sell the guns, but no one showed. After they left the trailer park, they were stopped by the Wooster Police. Stanley testified that he knew they were going to try to sell more than two guns, but he was not sure how many.
 {¶ 23} The jury next heard from Shane Thomas, who knew and identified Evans in court. Thomas explained that on August 10, 2006, or the early morning hours of August 11, 2006, he drove Evans and another individual to the trailer park. Thomas testified that he drove a 1988 Camaro. Due to the fog and his lack of familiarity with the area, Thomas let Evans drive his car. Evans stopped and picked up a friend on the way to the trailer park. Thomas testified that Evans circled around a particular trailer twice, then pulled over and got out with another individual. The two men took a pry bar from Thomas' car. Evans told Thomas to drive around the trailer park and stop when he saw them again. Thomas testified that Evans and the other man loaded several rifle cases into the back of his car. Thomas then drove to Bryant Patrick's apartment on Normandy Drive. Upon arrival, all of the men exited the car, and Evans and another individual took the gun cases out of the car and took them into Patrick's apartment. Thomas testified that he was charged and convicted of burglary and theft as a result of his involvement. *Page 8 
 {¶ 24} The jury next heard testimony from Kristy Thompson. Thompson testified that in August of 2006 she lived with her boyfriend, Eric Lane, and their child on Normandy Drive. She explained that Thomas lived with them in August of 2006. She testified that during the afternoon of August 11, 1006, she saw Evans in Thomas' car. According to Thompson, Evans said that they had stolen some guns. On redirect examination, Thompson testified that she heard Thomas say that they had used a crow bar and entered the trailer through the window.
 {¶ 25} The State called City of Wooster Police Department Sergeant Merillat. Sergeant Merillat testified that he was asked to test firearms that were taken into custody to determine if they were operational. Sergeant Merillat tested all of the guns except two rifles. He testified that all the guns he tested were operational. One of the rifles appeared to be in good working order. He said he had no reason to believe that it was not operational.
 {¶ 26} The State next called City of Wooster Police Department Detective Tony Lemmon. Detective Lemmon testified that on August 17, 2006, he was contacted by a Medway agent who informed him that a confidential informant had information regarding the trailer break-in. The confidential informant's name was Dwayne Witmer. Witmer informed Detective Lemmon that Evans, along with some "Cleveland boys[,]" broke into the trailer and took some guns. Detective Lemmon testified that Witmer informed him that he knew where the guns were being stored, but that he wanted his felony charges dropped.
 {¶ 27} On August 21, 2006, Witmer contacted Detective Lemmon and informed him that Evans was trying to sell the guns and that he was in a silver Volkswagen Jetta. Witmer stated that Evans was with a person that went by the name GG. Detective Lemmon testified that he knew GG as Jeannetta Todd Stewart. Witmer gave Detective Lemmon a cell phone number. Detective Lemmon called the number and a male, whom Detective Lemmon believed to be *Page 9 
Evans, answered the phone. Detective Lemmon testified that he had dealt with Evans several times in the past and therefore recognized his voice. Detective Lemmon informed Evans that he was Witmer's friend Jim. Evans then gave the phone to GG and arrangements were made for Detective Lemmon to buy eight guns. Detective Lemmon testified that he spoke with Evans to discuss the meeting place, the trailer park, and time, 5:45 a.m. Detective Lemmon testified that officers spotted the target vehicle, the silver Volkswagen Jetta, at the meeting site, but that the vehicle only stayed there for five minutes. Detective Lemmon asked the officers to do a traffic stop of the vehicle. Detective Lemmon arrived at the traffic stop and noted that Joshua Stanley, Evans, and Jeannetta Todd Stewart were in the vehicle. Detective Lemmon stated that the search of the vehicle revealed only two guns.
 {¶ 28} Detective Lemmon then went to Evans' home, asked and received permission from his mother to search the home, but did not locate the six remaining guns. Detective Lemmon then spoke with Stanley and asked him if they had stopped anywhere prior to going to the trailer park. Stanley indicated that they had, and took them to Bryant Patrick's residence at 1784 Normandy Drive. Detective Lemmon spoke with Bryant Patrick and asked him to sign consent to search the residence for the guns. Patrick consented and showed Detective Lemmon the closet where the six guns were found. Patrick informed Detective Lemmon that Shane Thomas had brought them over and that Evans was across the street at the time. Detective Lemmon met with Shane Thomas. Thomas informed Detective Lemmon that Evans and another individual stole the guns from the trailer while he drove and that Evans and the other individual carried them into the Normandy Drive apartment. Detective Lemmon learned that Thomas had driven a Camaro on August 11, 2006. Detective Lemmon searched the Camaro and located the pry bar that Thomas indicated was used to steal the guns. Detective Lemmon informed Thomas *Page 10 
that Patrick had informed him that Thomas had carried the guns into the Normandy Drive apartment. Thomas denied this fact and offered to take a polygraph test.
 {¶ 29} On cross examination, Detective Lemmon confirmed that Witmer was in the car the night the guns were stolen, and that he was working with police because he had been charged with five felonies and wanted to "get out of something." Detective Lemmon testified that at the time he spoke with Witmer, he did not know that Witmer was involved in the burglary. He testified that Witmer led him to believe that he knew of the burglary because Evans told him about it. Detective Lemmon testified that Thomas never told him that Evans was driving his car on the night of the burglary. Detective Lemmon testified that Stanley had admitted that he had taken the two guns found in his car from his step-father. On redirect examination, Detective Lemmon testified that Shane Thomas' testimony at trial was "pretty consistent" with his prior statements to Detective Lemmon.
 {¶ 30} Evans called Bryant Patrick to testify on his behalf. Bryant Patrick testified that he was currently serving a five-year sentence, which was not related to the instant case. He testified that Shane Thomas brought the weapons into his Normandy Drive apartment. Patrick further testified that Evans did not carry any of the guns, and that Evans was not with Patrick when Patrick brought the guns to his apartment. Patrick testified that he spoke to Evans after Thomas dropped the guns off to see if Evans knew anyone who wanted to buy the guns. Patrick testified that Evans did not touch the guns. Patrick testified that if Thomas testified that Evans brought the guns into his home then that was a lie.
 {¶ 31} On cross-examination, Patrick testified that his statement, written on August 21, 2006, stated that Evans was around when Thomas brought the guns into his house. He further testified that he had known Evans for at least fifteen years. *Page 11 
 {¶ 32} Evans testified on his own behalf. He testified that in August of 2006 he lived with his mother. He further testified that he had not touched any firearms since his 1997 federal conviction for trafficking drugs. Evans testified that Patrick asked him to look at the guns, and asked if he knew anyone who would buy them. He stated that he talked to Jeannetta Todd Stewart about the guns. Stewart knew Witmer. Evans testified to some phone conversations with Detective Lemmon and stated that he heard Stewart offering to sell him six or seven guns. Evans stated that he did not offer the guns for sale. According to Evans, he, along with Stewart and Stanley, was going to meet Witmer at the trailer park. He stated that he thought Witmer had guns and that Stanley and Stewart had guns. He then mentioned the guns he had seen at Patrick's home. Evans testified that he was going to be the "mediator" but that he was not going to handle or transfer any guns. According to Evans, the group stopped at Patrick's apartment, but no one answered the door.
 {¶ 33} Evans testified that he was not involved with the burglary of Briggs' trailer. He further testified that he never told Witmer that he was involved in the burglary, and that he never had a conversation with Detective Lemmon. On cross examination, Evans admitted that he had been convicted of falsification in 2006. He further testified that on occasion he had lied to police officers.
 {¶ 34} It is clear from the testimony that the jury did not lose its way when it found Evans guilty of burglary, theft, and of having weapons under a disability. Thomas testified that Evans entered Briggs' home and took several guns, and that he carried the guns from the home and subsequently into the Normandy Drive apartment. Detective Lemmon testified that Witmer gave him a cell phone number to call to attempt to purchase the guns and Evans answered the phone. Detective Lemmon testified that Evans was in the targeted vehicle that arrived to sell the *Page 12 
guns. Finally, Thompson testified that she overheard Evans say that he stole the guns. While Evans denied having any involvement with the burglary, he also testified that he had been previously convicted of falsification and admitted to lying to police officers on occasion.
 {¶ 35} It is clear that the jury did not lose its way when it convicted Evans of burglary, theft, and of having weapons under a disability. Further, as we have disposed of his argument that his convictions were against the manifest weight of the evidence, we dispose of his argument that his conviction for having weapons under a disability was based on insufficient evidence. Accordingly, Evans' second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR IV "THE STATE FAILED TO PROVIDE DISCOVERY TO 
EVANS IN VIOLATION OF CRIMINAL RULE 16 B, THUS VIOLATING THE DEFENDANTS RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTION 10 AND 16
ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 36} In his fourth assignment of error, Evans contends that the state failed to provide discovery to him in violation of Crim. R. 16(B), thus violating his rights under the Sixth, Eighth, andFourteenth Amendments of the United States Constitution and Sections 10 and 16, Article I, of the Ohio Constitution. Specifically, Evans contends that the state failed to comply with Crim. R. 16(B) by failing to inform him prior to trial that Shane Thomas had been sentenced to community control for his role in this case. We do not agree.
 {¶ 37} Evans argues here that the trial court was required to "inquire into the circumstances producing the alleged violation of Criminal Rule 16." During Thomas' cross examination, Evans' counsel began questioning Thomas about a possible plea deal. Thomas then informed Evans' counsel that he had already been charged and sentenced to community control for his involvement in this case. The trial court then, sua sponte, requested that counsel *Page 13 
approach the bench. The court briefly spoke to the attorneys about Thomas' sentence and informed them that the court was going to inform the jury of the sentence. Evans' counsel responded "Okay[,]" and stated that he did not know that the sentencing had been completed. While it is clear from the transcript that Evans' trial counsel was unaware that Thomas had already been charged for his involvement in this case, we note that Evans did not object to this issue at trial. Rather, the trial court informed the jury of Thomas' conviction and sentence. Evans' counsel then proceeded with cross examination.
 {¶ 38} Due to Evans' failure to object to this issue at trial, he has forfeited this issue on appeal. Typically, if a party forfeits an objection in the trial court, reviewing courts may notice only "[p]lain errors or defects affecting substantial rights[.]" Crim. R. 52(B). "A plain error must be obvious on the record, such that it should have been apparent to the trial court without objection." State v. Kobelka (Nov. 7, 2001), 9th Dist. No. 01CA007808, at *2, citing State v. Tichon
(1995), 102 Ohio App.3d 758, 767. As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has "established that the outcome of the trial clearly would have been different but for the alleged error."Kobelka, supra, at *2, citing State v. Waddell (1996),75 Ohio St.3d 163, 166, and State v. Phillips (1995), 74 Ohio St.3d 72, 83. We find that Evans has failed to establish that the outcome of his case would have been different had he been aware of Thomas' conviction and sentence prior to trial. Further, the trial court informed the jury of Thomas' conviction and sentence. Therefore, we find that Evans has not demonstrated plain error in this case. Accordingly, Evans' fourth assignment of error is overruled. *Page 14 
 ASSIGNMENT OF ERROR V "THE TRIAL JUDGE VIOLATED [EVANS'] SIXTH AMENDMENT RIGHT TO A JURY TRIAL WHEN THE RECORD INDICATES JUDICIAL FINDINGS AT SENTENCING."
 {¶ 39} In his fifth assignment of error, Evans contends that the trial court violated his Sixth Amendment right to a jury trial when the record indicates judicial findings were made at sentencing. We do not agree.
 {¶ 40} Evans points to a portion of the sentencing transcript where the trial court indicated that it had reviewed his presentence report in determining the sentence. In State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, the Supreme Court of Ohio found that Ohio's sentencing structure was unconstitutional to the extent that it required judicial fact-finding. (Emphasis added). Id. at paragraphs one through seven of the syllabus. The Foster Court further noted that "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster, at ¶ 42. Moreover, post-Foster, it is axiomatic that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus.
 {¶ 41} Our review of the record reveals that by mentioning Evans' criminal record and presentence report, the trial court was properly considering R.C. 2929.12(D)(2), which, under Foster, is a necessary consideration. See State v. Roper, 9th Dist. No. 23454, 2008-Ohio-1053, at ¶ 12. We do not agree with Evans' conclusion that this consideration resulting in improper judicial fact finding. Accordingly, Evans' fifth assignment of error is overruled. *Page 15 
 III. {¶ 42} Evans' assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 SLABY, J., DICKINSON, J. CONCUR *Page 1